**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EDWARD ROSE DEVELOPMENT COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>KWAME RAOUL and VILLAGE OF ROMEOVILLE, ILLINOIS,<br><br>Defendants. | Case No. 25-cv-15629<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Edward Rose Development Company ("Rose") owns property located in the Village of Romeoville, Illinois. Rose seeks to build an apartment complex and a senior-living residence on it. Before the purchase was finalized, the State of Illinois passed the Illinois Electric Vehicle Charging Act ("EVCA"), 765 ILCS 1085, which forbids issuing a building permit unless 100% of the parking spaces at Rose's developments will be "EV-capable"—that is, support charging for electric vehicles. Rose brings suit against Illinois Attorney General Kwame Raoul, in his official capacity, and the municipality of Village of Romeoville, Illinois ("Romeoville") because it believes that the requirement imposed by the EVCA violates the U.S. Constitution and the Illinois Constitution.

Before the Court today are motions to dismiss filed, respectively, by Mr. Raoul and by Romeoville. Both parties argue that Rose's case must be dismissed pursuant to Rule 12(b)(1) for lack of standing and pursuant to Rule 12(b)(6) for failure to state a claim. The Court finds that Rose's complaint fails to demonstrate that its rights in the property at issue were injured by the EVCA and accordingly lacks standing to sue. Accordingly, the Court grants both motions and dismisses Rose's case, with prejudice, for lack of subject-matter jurisdiction.

## BACKGROUND

Unless otherwise indicated, the following details are taken from the complaint and are assumed true for the purpose of resolving the instant motions to dismiss.

Plaintiff Edward Rose Development Company is a real estate developer with operations in eighteen states. In August 2022, Rose tentatively agreed to purchase two parcels of real property ("the Property") at the southeast corner of 135th Street and Weber Road in Will County, Illinois. Some of the Property was incorporated in the Village of Romeoville, but the majority was unincorporated. Simultaneously, Rose submitted a pre-application to Defendant Romeoville relating to development of the Property. Rose planned to build a large apartment complex and a large senior living residence on the Property. In June 2024, Rose and Romeoville signed an Annexation and Development Agreement ("the Agreement"), in which the Property would be annexed into the Village of Romeoville in exchange for a conditional agreement from Romeoville to re-zone the Property and to approve Rose's final development plan. The Agreement specifically conditioned the issuance of a building permit on "compliance with applicable Village ordinances… [and] applicable requirements of other governmental agencies having jurisdiction over the development of" the Property. Dkt. 23-1 ¶ 3.4.[1] On August 15, 2024, Rose finalized its purchase of the Property for $9.5 million.

On June 9, 2023—after Rose executed its purchase agreement for the Property, but before it signed the Agreement with Romeoville—the State of Illinois enacted the Illinois Electric Vehicle Charging Act ("EVCA"), 765 ILCS 1085. As relevant here, the law requires that every parking space for the residential buildings that Rose plans to erect on the Property be "EV-capable." *Id.* § 1085/25(a). Although the EVCA had been on the books for about a year at the time that Rose and

[1] Attorney General Raoul attached a copy of the Agreement as an exhibit to his motion to dismiss. Dkt. 23-1. Because Rose incorporated the Agreement by reference into its complaint, and it has not challenged the validity of the document, the Court takes judicial notice of its content. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

Romeoville signed the Agreement, Rose alleges that Romeoville did not inform Rose at the time that it would require Rose to be in compliance with the law.

In July 2025, Romeoville told Rose that it would not approve the development plan for the Property or issue a building permit until Rose submitted a "compliance plan" detailing the development's conformity with the EVCA. Rose claims that Romeoville did not previously inform Rose that it would condition issuance of a building permit on compliance with the EVCA. Rose also alleges that it would need to spend approximately $10–15 million to bring the Property into compliance with the EVCA. Because Rose has already started preparing the Property for residential development, including approximately $5.3 million in expenses on top of the purchase price, it argues that other potential uses of the Property are not economically viable. It also alleges that the need to comply with the EVCA has reduced the potential sale price of the Property from $9.5 million to, at most, $3 million. Rose alleges that the costs of compliance with the EVCA render the law an illegal taking under the Fifth Amendment of the U.S. Constitution and Article I, Section 15 of the Illinois Constitution.

Rose filed its complaint in this case on December 23, 2025. Mr. Raoul and Romeoville filed their respective motions to dismiss under Federal Rules of Civil Procedure 12(b)(1)( and 12(b)(6) on February 10 and 20, 2026. All parties timely submitted their response and reply briefs, after which this Court took both motions under advisement.

## LEGAL STANDARD

A Rule 12(b)(1) motion challenges federal jurisdiction, and the complaining party bears the burden of establishing the elements necessary for subject matter jurisdiction, including standing to seek relief. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021); *International Union of Operating Eng'rs v. Daley*, 983 F.3d 287, 294 (7th Cir. 2020). Under Rule 12(b)(1), the Court accepts all well-pled factual allegations as true and construes all reasonable inferences in the plaintiff's favor when

a defendant has facially attacked standing. *Prairie Rivers Network v. Dynegy Midwest Generation*, LLC, 2 F.4th 1002, 1007 (7th Cir. 2021).

**DISCUSSION**

Article III of the U.S. Constitution "requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). Both Defendants argue that Rose cannot satisfy these requirements and that its complaint must therefore be dismissed for lack of standing. Both Defendants also argue that Rose has not plausibly alleged a legal claim. If Rose does not have Article III standing, then this Court lacks subject matter jurisdiction over this case, meaning that this Court has no legal authority to adjudicate its claims. *Hollingsworth*, 570 U.S. at 704. Federal courts cannot assume that subject-matter jurisdiction exist; as such, they are required to resolve any jurisdictional issues before proceeding to the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Accordingly, this Court will begin with the question of Rose's standing to sue each Defendant.

In the context of a Fifth Amendment takings claim, a legal "injury" means a deprivation of a recognized property interest. *Pittsfield Dev., LLC v. City of Chicago*, No. 17 C 1951, 2019 WL 1125818, at *7 (N.D. Ill. Mar. 12, 2019) (Kocoras, J.) (citing *Wield v. Raemisch*, 296 F. App'x 535 (7th Cir. 2008)). Property rights do not exist in a vacuum; they are creations of law, typically state law. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests… are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."); *Barnhill v. Johnson,* 503 U.S. 393, 398 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law."). As the Supreme Court has put it, "A common idiom describes

property as a 'bundle of sticks'—a collection of individual rights which, in certain combinations, constitute property. State law determines… which sticks are in a person's bundle." *United States v. Craft*, 535 U.S. 274, 278 (2002) (citations omitted). In Illinois, the laws of the state include laws controlling the issuance of building permits. *See generally, e.g.*, 65 ILCS 5/11-13, 11-14.

Rose claims that it would have to spend approximately $10–15 million in EVCA compliance costs in order to obtain a building permit, and that the value of the Property has declined from the purchase price of $9 million to "at most" $3 million. Dkt. 1 ¶¶ 44, 47. Consequently, Rose alleges that "Defendants have seized without appropriate compensation Edwards Rose's real and personal property by forcing material limitations on Edward Rose's development of the Property in Romeoville." *Id.* ¶ 52. At first glance, these costs seem like the sort of economic injury that constitutes the bread and butter of standing, and Rose treats the existence of its injury as more-or-less self-evident. *See, e.g.,* dkt. 40 at *8. But Rose's alleged injury falls apart upon closer inspection, even when taking all of Rose's allegations as true and drawing every reasonable inference in the developer's favor.

Both Defendants maintain that Rose cannot have been injured by the EVCA because "the EVCA was passed and became effective *before* Plaintiff entered into an annexation agreement with Romeoville and finalized its purchase of the Property." Dkt. 23 at *10; *see also* dkt. 33 at *10. The complaint alleges that Rose signed the Annexation and Development Agreement with Romeoville in June 2024, and that it finalized its purchase of the Property on August 15, 2024. *Id.* ¶¶ 22, 25. However, the EVCA became law on June 9, 2023, more than a year prior to Rose closing on the Property. *Id.* ¶ 26. Moreover, as both Defendants note, the Annexation and Development Agreement between Rose and Romeoville specifically conditioned the issuance of a building permit on "compliance with… applicable requirements of other governmental agencies having jurisdiction over the development of" the Property. Dkt. 23-1 ¶ 3.4; *see* dkt. 23 at *14; dkt. 33 at *11. Needless to say, the State of Illinois is another government with jurisdiction over the Property. Accordingly, Rose's development rights for

the Property were always subject to the EVCA, and Rose cannot reasonably claim that it was deprived of its rights in the Property by a law already in existence at the time of purchase.

Had the EVCA passed into law *after* Rose purchased the Property, then it could plausibly claim to have suffered a deprivation of its property rights. In that scenario, Rose would initially have had the right to develop its Property without consideration of whether the Property's parking spaces were EV capable—a right that would have been eliminated, in this scenario, by the subsequent passage of the act. Whether this would constitute an unconstitutional taking is a separate question, but it seems clear that Rose would at least have suffered an injury sufficient for standing. However, because the law was enacted a year *prior* to purchase, Rose never possessed the right in the first place. Put another way: when Rose purchased the Property, it had the right to use the Property for any legal purpose it chose. But because the EVCA was already part of Illinois law at the time, Rose's list of legally permitted purposes did not include "building new, large multifamily residential buildings without having 100% of the accompanying parking spaces EV-capable." One cannot be injured by the loss of a right that one never possessed. *See Kreuziger v. Milwaukee Cnty., Wisconsin*, 60 F.4th 391, 397 (7th Cir. 2023) ("The defendants cannot have taken a right that [the plaintiff] never had.").

As such, even if it is true that Rose must spend $10–15 million on EV infrastructure to obtain a permit for its desired development of the Property—an expense which, the Court notes, Rose has not yet incurred—that cannot constitute a legal injury because Rose never possessed a right to obtain such a permit for the Property without complying with the EVCA. *See Bd. of Regents*, 408 U.S. at 577 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."); *Yates v. City of Chicago*, No. 18 C 2613, 2021 WL 4355365, at *4 (N.D. Ill. Sept. 25, 2021) (Gettleman, J.), *aff'd*, 58 F.4th 907 (7th Cir. 2023) ("It is doubtful that plaintiffs can have a constitutionally protected property right in something to which they were never entitled.").

Similarly, if it is really true that the value of the Property today is no more than $3 million, and that the EVCA really caused this claimed diminution in value, that still cannot constitute an injury to Rose because the reduction in the market price would have taken place when the law was passed—a year prior to Rose's purchase of the Property. Whatever impact the EVCA may have had on the value of the property, that impact was already "baked in" when Rose closed on the Property. Taking Rose's allegations as true, the complaint shows that the approximate market value of the Property *at the time of purchase* was about $3 million, despite the purchase price of $9.5 million.

This is therefore a case where the plaintiff has pled itself out of court. *See Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir.1992) ("If [Plaintiff] alleges facts that show he isn't entitled to judgment, he's out of luck.") Ultimately, Rose's allegations of injury only demonstrate that the developer failed to take the implications of the EVCA into account when it purchased the Property, and that it consequently wildly overpaid for two parcels of land that were already economically unsuitable for Rose's desired developmental purposes. It is not the Court's job to step in to save a sophisticated developer like Rose from the consequences of its inattention to the applicable laws of Illinois, particularly when compliance with such laws was a contractual condition precedent to the issuance of the building permit that Rose believes it is entitled to. *See In re Drs. Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 959 (7th Cir. 2003) ("It is presumed that parties contract with knowledge of the existing law.") Rose's contention that "it could not reasonably have contemplated the substantial impact" of the EVCA is unavailing. Dkt. 40 at *15.

With respect to the value of Rose's Property, there is no legal difference between the EVCA and the dozens of other permitting laws on the books on August 15, 2024. Rose has not alleged any legal injury from those other permitting laws, nor could it reasonably do so. Those other laws did not injure Rose because it never had any right to develop the Property in contradiction of them, and the same is true for the EVCA. The Court holds that Rose suffered no injury to its interests in the

Property, and that it therefore has no standing to sue Mr. Raoul, Romeoville, or anybody else relating to the alleged impact of the EVCA on the value of the Property. The Court therefore grants both motions and dismisses Rose's complaint with prejudice.[2]

## CONCLUSION

The Court grants Attorney General Raoul's motion to dismiss [22] and Romeoville's motion to dismiss [32]. Rose's complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

Date: 8/12/2026

Entered: ______________________________
SHARON JOHNSON COLEMAN
United States District Judge

[2] Because lack of injury is sufficient to defeat standing, the Court does not reach the questions of whether the Attorney General or Romeoville is responsible for enforcing the EVCA, or whether Rose plausibly alleged that the EVCA is unconstitutional. However, without expressing any formal opinion as to the merits, the Court believes that both Defendants have advanced extremely strong arguments against Rose's contention of unconstitutionality.